# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CALVIN PHILLIPS, | No. 4:18-CV-00401 |
| Plaintiff, | (Judge Brann) |
| v. | |
| GREAT DANE, LLC, | |
| Defendant. | |

## MEMORANDUM OPINION

### JUNE 12, 2019

Defendant Great Dane, LLC has moved for summary judgment on Plaintiff Calvin Phillips's second amended complaint. For the following reasons, that motion will be granted in part and denied in part.

**I.    BACKGROUND**

Great Dane, a commercial trailer manufacturer, employed Mr. Phillips at its Elysburg, Pennsylvania facility. Great Dane explains that Mr. Phillips was fired after he was caught smoking in an unauthorized area—a terminable offense. Great Dane also explains that before the incident precipitating his termination, Mr. Phillips had received two disciplinary infractions: a verbal warning for using a piece of equipment in violation of Great Dane's safety rules and a verbal warning for sleeping at work.

Mr. Phillips, however, contends that Great Dane fired him because he is African-American and has cancer, using the offense leading to his termination as a pretext for race and disability discrimination. Mr. Phillips explains that although he was smoking in a forbidden area, he joined several other Caucasian smokers in doing so and was the only non-white smoker singled out and punished. He further suggests that his termination came shortly after he informed Great Dane about his cancer diagnosis and inquired about needing medical leave.

Mr. Phillips's six-count second amended complaint alleges violations of the Americans With Disabilities Act (ADA) (Count I), the Family and Medical Leave Act (FMLA) (Count II), Title VII of the Civil Rights Act of 1964 (Count III), Section 1981 of the Civil Rights Act of 1866 (Count IV), and the Pennsylvania Human Relations Act (PHRA) (Counts V and VI). Great Dane seeks summary judgment on all counts.[1]

## II. DISCUSSION

### A. Standard of Review

Summary judgment is granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[1] Motion for Summary Judgment (ECF No. 28). Because Mr. Phillips has consented to dismissal of his hostile work environment claims, *see* Brief in Opposition (ECF No. 32) at 7 n. 1, Great Dane's motion for summary judgment as to those claims will be granted.

matter of law."[2] A dispute is "genuine if a reasonable trier-of-fact could find in favor of the non-movant," and "material if it could affect the outcome of the case."[3] To defeat a motion for summary judgment, then, the nonmoving party must point to evidence in the record that would allow a jury to rule in that party's favor.[4] When deciding whether to grant summary judgment, a court should draw all reasonable inferences in favor of the non-moving party.[5]

### B. Great Dane is not entitled to summary judgment on Mr. Phillips's FMLA claims (Count II).

#### i. *FMLA Retaliation*

Great Dane argues that Mr. Phillips cannot establish his prima facie FMLA retaliation claim because Mr. Phillips's never invoked his FMLA rights.[6]

To sustain a prima facie FMLA retaliation claim, Mr. Phillips must demonstrate, *inter alia*, that he invoked his right to FMLA-qualifying leave by providing Great Dane adequate notice about his need to take leave.[7] Adequate

---

[2] Federal Rule of Civil Procedure 56(a).

[3] *Lichtenstein v. Univ. of Pittsburgh Medical Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 252 (1986)).

[4] Federal Rule of Civil Procedure 56(c)(1); *Liberty Lobby*, 477 U.S. at 249.

[5] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

[6] Brief in Support (ECF No. 29) at 17. ("In the case before this Honorable Court, Plaintiff has very clearly stated that, contrary to the allegations in his Complaint, Plaintiff did not invoke his right to FMLA leave because he did not know if he would need leave. Plaintiff's claim for FMLA retaliation must fail because it is undisputed that he never invoked his right to FMLA leave.").

[7] *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014).

notice is not confined to a "formalistic or stringent" standard requiring an employee to utter the term 'FMLA,' but is a question of fact determined by "how the information conveyed to the employer is reasonably interpreted."[8]

Here, whether Mr. Phillips provided adequate notice to Great Dane about his need to take FMLA leave is factually disputed. When Mr. Phillips advised human resources representative Shayla Nowakoski that he might have cancer, she asked whether he would need FMLA.[9] Mr. Phillips responded "I might need it."[10] Ms. Nowakoski then provided Mr. Phillips with contact information for Great Dane's FMLA third-party administrator.[11] Because Ms. Nowakoski furnished Mr. Phillips with information typically given to employees who request FMLA leave, a jury could infer that Mr. Phillips provided adequate notice to Great Dane about his need to take FMLA leave, and consequently, invoked his FMLA rights.[12]

---

[8] 29 C.F.R. § 825.303(b); *Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 303 (3d Cir. 2012) (citing *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 402 (3d Cir. 2007)); *see also Budhun v. Reading Hosp. and Medical Center*, 765 F.2d 245, 255 (3d Cir. 2014) ("it is the time that an employee invokes rights under the FMLA that matters, not when his or her employer determines whether the employee's leave is covered by the FMLA").

[9] Phillips Deposition – Exhibit A (ECF No. 33) at 38.

[10] *Id.*

[11] PNA Contact Sheet (ECF No. 32-25).

[12] *Compare Budhun*, 765 F.2d at 255-56 (noting defendant acknowledged that plaintiff invoked FMLA protections when defendant e-mailed plaintiff FMLA leave forms), *Mascioli v. Arby's Rest. Group, Inc.*, 610 F. Supp. 2d 419, 434–35 (W.D. Pa. 2009) (explaining that when plaintiff communicated probable need for future time off due to medical condition, genuine issue of fact as to whether plaintiff provided requisite notice under the FMLA precluded summary judgment), *with Gravel v. Costco Wholesale Corp.*, 230 F.Supp.3d 430, 437 (E.D.Pa. 2017) (concluding that plaintiff did not provide notice when he told defendant

Accordingly, Great Dane's motion for summary judgment as to Mr. Phillips's FMLA retaliation claim is denied.[13]

### ii. FMLA Interference

Great Dane argues that Mr. Phillips's FMLA interference claim fails because Mr. Phillips never notified Great Dane of his intention to take FMLA leave.[14] Great Dane also appears to argue that Mr. Phillips was never denied FMLA benefits because although Ms. Nowakoski provided Mr. Phillips with contact information for Great Dane's FMLA administrator, Mr. Phillips never actually contacted that individual.[15]

---

explicitly: "I let them know that I would not use bonding leave, but would need a lot of flexibility in my schedule to make sure I was there for my new child and also fulfill the needs of the job").

[13] Although Mr. Phillips's FMLA retaliation claim is assessed under the *McDonnell Douglas* burden-shifting framework, *see Capps v. Mondelez Global*, LLC, 847 F.3d 144, 151-52 (3d Cir. 2017) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)), Great Dane's sole argument in seeking summary judgment on Mr. Phillips's FMLA retaliation claim is that Mr. Phillips cannot establish his prima facie case, *see* Brief in Support (ECF No. 29) at 17. Consequently, the Court will not analyze the full *McDonnell Douglas* framework at this juncture. *See Wilson v. Graybar Electric Company Inc.*, No. 17-3701, 2019 WL 2061607, at *5 (E.D.Pa. May 9, 2019) (concluding that court need not address *McDonnell Douglas* framework when it denies summary judgment based on disputed factual issues as part of plaintiff's prima facie case).

[14] Brief in Support (ECF No. 29) at 15-16.

[15] *Id*. at 16 ("Contrary to his Complaint, Plaintiff admits to having been provided with FMLA information at the mere mention of a possible absence due to a health condition. Thereafter, Plaintiff never requested FMLA leave. Plaintiff was not denied any benefit to which he was entitled under the FMLA, and his claim for FMLA interference must fail.").

To succeed on his FMLA interference claim, Mr. Phillips must demonstrate, *inter alia*, that he gave Great Dane notice of his intention to take FMLA leave and that he was denied benefits to which he was entitled under the FMLA.[16]

Here, as to the notice requirement, when Mr. Phillips told Ms. Nowakoski that he might have cancer and Ms. Nowakoski furnished Mr. Phillips with information typically given to employees who request FMLA leave, a jury could conclude that Mr. Phillips provided Great Dane with notice of his intention to take FMLA leave.

Further, viewing all inferences in Mr. Phillips's favor, Mr. Phillips has pointed to evidence that he was denied FMLA benefits to which he was entitled: specifically, that Great Dane determined Mr. Phillips was likely eligible for FMLA leave,[17] that he informed Great Dane of his medical issues,[18] and that within a short time[19] of being so notified, Great Dane terminated Mr. Phillips's employment

---

[16] *Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014).

[17] Nowakoski Deposition – Exhibit C (ECF No.32-5) at 69.

[18] Defendant's Statement of Facts (ECF No. 28-2) at ¶ 36, *admitted in* Plaintiff's Statement of Facts (ECF No. 32-2) at ¶ 36.

[19] On June 11, 2017, Mr. Phillips went to a doctor's appointment after he observed blood in his urine, and learned that doctors found a suspicious mass. Medical Report – Exhibit R (ECF No. 32-19) at 2-3. Approximately one month later in mid-July, Mr. Phillips requested time off, telling his supervisor Nate Stahl that he had another doctor's appointment to identify the kind of mass on his kidney. Time-Off Request Details – Exhibit S (ECF No. 32-20) at 2; July 12 Medical Report – Exhibit V (ECF No. 32-23) at 2-3. Around this time, Mr. Phillips suggests that he informed both Mr. Stahl and Ms. Nowakoski of the possibility that he might have cancer. Phillips Deposition – Exhibit A (ECF No. 33) at 40-41; Phillips Interrogatory – Exhibit H (ECF No. 32-10) at 4. Although Great Dane states that "[t]he parties agree that Plaintiff's first reported disability did not occur until June 11," *see* Reply Brief (ECF No. 34)

before he could use FMLA leave. Courts evaluating claims of plaintiffs in similar circumstances have denied summary judgment to employers.[20]

Accordingly, Great Dane's motion for summary judgment as to Mr. Phillips's FMLA interference claim is denied.[21]

---

at 6, Great Dane does identify where in the record such agreement is supported. Mr. Phillips was diagnosed with kidney cancer on July 17, 2017. July 17 Medical Report – Exhibit Y (ECF No. 32-26) at 2-3.

[20] *See Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009) (explaining that when employee requested FMLA leave but was fired before leave was scheduled to begin, such circumstances "may constitute interference with the employee's FMLA rights as well as retaliation against the employee"); *Detwiler v. Clark Metal Prod. Co.*, No. CIV.A.08-1099, 2010 WL 1491325, at *24 (W.D. Pa. Mar. 19, 2010), *report and recommendation adopted*, No. CIV.A. 08-1099, 2010 WL 1489985 (W.D. Pa. Apr. 12, 2010) ("Viewing all inferences in favor of Plaintiff as the non-moving party, she has stated a claim for interference with her rights under the FMLA. Specifically, she has pointed to evidence that Clark Metal had already granted her FMLA leave that she had not yet exhausted, that she informed the company of her husband's deteriorating condition which would have required her to take additional FMLA leave and that, within days of being so notified, Clark Metal terminated her employment."); *see also Budhun v. Reading Hosp. and Medical Center*, 765 F.2d 245, 255 (3d Cir. 2014) (rejecting defendant's argument that an employer must approve leave before employee is FMLA eligible).

[21] Although Great Dane can ultimately defeat Mr. Phillips's interference claim if it can demonstrate that Mr. Phillips was terminated for reasons unrelated to his exercise of rights under the FMLA, *see Callison v. City of Philadelphia*, 430 F.3d 117, 119-120 (3rd Cir. 2005), Great Dane does not seek summary judgment on that basis, and consequently, the Court will not analyze that issue at this juncture.

Additionally, case law suggests that an interference claim may subsume a retaliation claim. *See, e.g.*, *Erdman*, 582 F.3d at 509 ("[F]iring an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee."); *see also* 29 CFR § 825.220(c) ("The [FMLA's] prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights."). To the extent Mr. Phillips's interference claim is redundant of his retaliation claim, an issue not raised by either party, the Court does not address it here. *See Lichtenstein*, 691 F.3d at 312 n.25 ("It is not clear to us that *Erdman* necessarily guarantees that plaintiffs have an automatic right to claim interference where, as here, the claim is so clearly redundant to the retaliation claim. In recent years, several federal courts of appeals have affirmed dismissal of

**C. Great Dane is not entitled to summary judgment on Mr. Phillips's disability discrimination and retaliation claims under the ADA (Count I) and PHRA (Count V).[22]**

*i. Disability Discrimination*

Great Dane seems to suggest that Mr. Phillips cannot establish a prima facie case of disability discrimination because the individuals who fired Mr. Phillips had no knowledge of his cancer diagnosis.[23]

Mr. Phillips's disability discrimination claims are assessed under the *McDonnell Douglas* burden-shifting framework.[24] Under that framework, Mr. Phillips must first establish a prima facie case of disability discrimination by demonstrating, *inter alia*, that he suffered an adverse employment decision as a result of disability discrimination.[25]

Here, a jury could conclude that Mr. Phillips has established his prima facie disability discrimination claims. The parties agree that Mr. Phillips disclosed the

---

    interference claims that—although not necessarily analogous to [the plaintiff's] claim here—were duplicative of the plaintiffs' retaliation claims. Since this issue was not raised below nor presented on appeal, we do not address it here.").

[22] The ADA and PHRA are "interpreted coextensively." *Castellani v. Bucks Cty. Municipality*, 351 Fed.Appx. 774, 777 (3d Cir. 2009).

[23] Brief in Support (ECF No. 29) at 17-19.

[24] *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996).

[25] *Id.* at 831.

possibility that he may have cancer to Ms. Nowakoski.[26] While Great Dane contends that Ms. Nowakoski was not involved in terminating Mr. Phillips, explaining that the decision belonged either to human resources director Kimberly McCauley or to production manager Matt Russell,[27] Mr. Phillips adduces evidence suggesting that both Mr. Russell and Ms. McCauley conferred with Ms. Nowakoski in deciding to terminate Mr. Phillips.[28] A jury could conclude that if Ms. Nowakoski was involved Mr. Phillips's termination, then Mr. Phillips may have suffered an adverse employment decision as a result of disability discrimination.

Although Great Dane explains that Mr. Phillips was fired for smoking in an unauthorized area, the short temporal proximity between Mr. Phillips's medical disclosures and his termination[29] coupled with the credibility issues born by Great Dane's employees involved with Mr. Phillips's termination[30] could lead a

---

[26] Defendant's Statement of Facts (ECF No. 28-2) at ¶ 36, *admitted in* Plaintiff's Statement of Facts (ECF No. 32-2) at ¶ 36.

[27] Brief in Support (ECF No. 29) at 11; Reply Brief (ECF No. 34) at 3; McCauley Deposition – Exhibit B (ECF No. 32-4) at 11.

[28] Nowakoski Interrogatory – Exhibit W (ECF No. 32-34) at 4; McCauley Deposition – Exhibit B (ECF No. 32-4) at 11; Nowakoski Termination Notes – Exhibit CC (ECF No. 32-30) at 2.

[29] *See Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (explaining that pretext may be demonstrated by presenting evidence of temporal proximity between the protected activity and the adverse action);

[30] *See Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638-39 (3d Cir. 1993) (explaining that the Third Circuit has found "factors such as the defendant's credibility, the timing of an employee's dismissal, and the employer's treatment of the employee could raise an inference of pretext which would make summary judgment for the employer inappropriate").

reasonable jury to infer, under the totality of the circumstances,[31] that Mr. Phillips' termination was a pretext for disability discrimination.[32] As to the short temporal proximity, drawing inferences in Mr. Phillips's favor, Mr. Phillips may have been terminated only days after he revealed his possible cancer diagnosis to Great Dane.[33] As to Great Dane's credibility issues, because Ms. Nowakowski and Mr. Russell have testified inconsistently and in contradiction with each other, their credibility is called into question.[34] For example, while Ms. Nowakoski testified at deposition that she was not involved in firing Mr. Phillips,[35] her own notes and interrogatory responses coupled with Ms. McCauley's testimony suggest that she

---

[31] *See Moore v. City of Phila.*, 461 F.3d 331 (3d Cir. 2006) (explaining that a determination of discrimination will "depend on the totality of the circumstances, as ... a discrimination analysis must concentrate not on individual incidents, but on the overall scenario").

[32] Assuming that Mr. Phillips established his prima facie case of disability discrimination, and Great Dane supplied a legitimate, nondiscriminatory reason for the adverse employment action, the *McDonnell Douglas* framework requires Mr. Phillips to establish that his termination was a pretext for disability discrimination—that is, Mr. Phillips must adduce evidence allowing a jury to "reasonably either disbelieve [Great Dane's] articulated legitimate reasons; or believe that an invidious discriminatory reason was more likely than not a motivating factor or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

[33] *See supra* n.19.

[34] *See Burton v. Teleflex Inc.*, 707 F.3d 417, 427 (3d Cir. 2013) (explaining that a plaintiff can show that the reason he was fired was a pretext for discrimination by point to "weaknesses, implausibilites, inconsistencies, incoherencies, or contradictions" in the employer's proffered legitimate reason such that "a reasonable factfinder could rationally find them unworthy of credence"); *Bray v. Marriott Hotels,* 110 F.3d 986, 990 (3d Cir.1997) ("An inference of pretext may arise if the plaintiff can raise suspicions with respect to the defendant's credibility....").

[35] Nowakoski Deposition – Exhibit C (ECF No.32-5) at 8, 27.

was.³⁶ And while Mr. Russell denies being involved the decision to fire Mr. Phillips,³⁷ Ms. McCauley and Ms. Nowakoski allege that he was.³⁸ These inconsistencies raise suspicions that a jury must resolve.

Accordingly, Great Dane's motion for summary judgment as to Mr. Phillips's ADA and PHRA disability discrimination claims is denied.

### ii. Disability Retaliation

Great Dane argues that Mr. Phillips's cannot establish a prima facie disability retaliation claim because he did not engage in protected activity.³⁹

Like his disability discrimination claims, Mr. Phillips's disability retaliation claims are assessed under the *McDonnell Douglas* burden-shifting framework.⁴⁰ Under that framework, Mr. Phillips must establish a prima facie case of disability

---

³⁶ Nowakoski Interrogatory – Exhibit W (ECF No. 32-34) at 4; McCauley Deposition – Exhibit B (ECF No. 32-4) at 11; Nowakoski Termination Notes – Exhibit CC (ECF No. 32-30) at 2.

³⁷ Russell Deposition – Exhibit DD (ECF No. 32-31) at 9-10.

³⁸ McCauley Deposition – Exhibit B (ECF No. 32-4) at 11; Nowakoski Termination Notes – Exhibit CC (ECF No. 32-30) at 2.

Even Great Dane's papers are contradictory on this point: while Great Dane's brief in support claims that Ms. McCauley made the decision to fire Mr. Phillips alone, its reply brief assigns decision-making authority to both Ms. McCauley and Mr. Russell. *Compare* Brief in Support (ECF No. 29) at 11 ("McCauley made the decision to terminate Plaintiff."); id. at 21 ("Recall here that the real decision-maker in this instance was McCauley."); id. at 26 ("McCauley was the decision-maker that determined he should be discharged."), *with* Reply Brief (ECF No. 34) at 3 ("McCauley and Russell both testified that they had no knowledge of Plaintiff's illness when they made the decision to terminate Plaintiff."); id. at 5 ("Nor is there evidence that Russell and McCauley knew of Plaintiff's race complaints or his disability.").

³⁹ Brief in Support (ECF No. 29) at 20.

⁴⁰ *Hughes v. City of Bethlehem*, 294 Fed.Appx. 701, 705 (3d Cir. 2008).

retaliation by showing, *inter alia*, that he engaged in protected activity.[41] A request for FMLA leave is protected activity.[42]

Here, a jury could conclude that Mr. Phillips engaged in protected activity if he invoked his FMLA rights during his conversation with Ms. Nowakoski. Because Ms. Nowakoski furnished Mr. Phillips with information typically given to employees who request FMLA leave, a jury could infer that Mr. Phillips provided adequate notice to Great Dane about his need to take FMLA leave, and consequently, that Mr. Phillips invoked his FMLA rights. As discussed in the context of Mr. Phillips's FMLA claims, if a jury decides that Mr. Phillips invoked his FMLA rights, then he also necessarily engaged in protected activity.[43]

Further, a jury could infer that Great Dane's proffered reason for firing Mr. Phillips was a pretext for disability retaliation[44] by crediting the same evidence giving rise to a pretextual finding in Mr. Phillips's disability discrimination claim. That is, the short temporal proximity between Mr. Phillips's medical disclosure

---

[41] *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

[42] *See, e.g., Bell v. Mericle Dev. Corp.,* No. 3:CV–05–1134, 2007 WL 431888, at *17 (M.D.Pa. Feb. 5, 2007) (finding a request for FMLA leave sufficient to satisfy protected activity requirement); *see also Williams v. Philadelphia Housing Authority Police Dept.,* 380 F.3d 751, 759 n.2 (3d Cir. 2004) (explaining that request for medical leave is a protected activity under the ADA)

[43] *Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 303 (3d Cir. 2012) (citing *Sarnowski v. Air Brooke Limousine, Inc.,* 510 F.3d 398, 402 (3d Cir. 2007)).

[44] Assuming that Mr. Phillips can establish his prima facie case of disability retaliation and that Great Dane justified his termination by citing to a legitimate, nondiscriminatory reason, *McDonnell Douglas* shifts the burden back to Mr. Phillips to show that Great Dane's proffered reason is pretext for disability retaliation. *Hughes*, 294 Fed.Appx. at 705.

and his termination coupled with the credibility issues surrounding Great Dane's employees could allow a jury to infer that his termination was a pretext for disability retaliation. And to the extent Great Dane argues that the individuals who fired Mr. Phillips did not know about his disability and therefore could not have retaliated against him, that fact, as previously explained, is disputed.

Accordingly, Great Dane's motion for summary judgment as to Mr. Phillips's disability retaliation claims under the ADA and PHRA is denied.

> **D. Great Dane is not entitled to summary judgment on Mr. Phillips's race retaliation and discrimination claims arising under Title VII (Count III), the Civil Rights Act (Count IV), and the PHRA (Count VI).[45]**
>
> *i. Race Retaliation*

Great Dane argues that Mr. Phillips cannot sustain a prima facie race retaliation claim because he cannot establish a causal connection between Mr. Phillips's complaints to Great Dane management and Mr. Phillips termination.[46]

Mr. Phillips's race retaliation claims are assessed under the *McDonnell Douglas* burden-shifting framework. Under that framework, Mr. Phillips must first establish a prima facie case of race retaliation requiring Mr. Phillips to show, *inter*

---

[45] Race discrimination claims brought pursuant to the PHRA and § 1981 are analyzed under the same framework as federal claims brought under Title VII. *See Brown v. J. Kaz, Inc.,* 581 F.3d 175, 181–82 (3d Cir. 2009); *Jones v. Sch. Dist. of Philadelphia,* 198 F.3d 403, 409 (3d Cir. 1999).

[46] Brief in Support (ECF No. 29) at 28-29.

*alia*, a causal connection between his protected activity and Great Dane's decision to fire him.[47]

Here, construing inferences in Mr. Phillips's favor, a jury could find a causal connection between Mr. Phillips's protected activity and Great Dane's decision to fire him. Mr. Phillips engaged in protected activity when he complained that two Great Dane employees—Walter Britton and Robert Fischer—had repeatedly used racial pejoratives towards Mr. Phillips, including calling him the "n-word," and a monkey.[48] Mr. Phillips appears to have reported these instances of racial discrimination in April of 2017[49] and was fired in July. While three months may be too long of a period to support causality alone,[50] Mr. Phillips points to facts suggesting that Great Dane employees continued to engage in a pattern of antagonism.[51] After his April complaint, although the slurs stopped, his supervisor, Mr. Stahl, began to disparage Mr. Phillips's work product—even though Mr. Phillips's prior conduct at Great Dane had never been subject to

---

[47] *Moore v. The City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006).

[48] Phillips Deposition – Exhibit A (ECF No. 33) at 17, 19, 27.

[49] Nowakoski Interrogatory (ECF No. 32-24) at 6.

[50] *LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217, 232-23 (3d Cir. 2007)

[51] *See Biggs v. Thomas Jefferson Univ. Hosp.*, No. 13–03037, 2014 WL 3709749, at *4 (E.D.Pa. July 28, 2014) ("A causal connection can be demonstrated by providing direct or circumstantial evidence of (1) unusually suggestive temporal proximity; (2) a pattern of antagonism following the protected activity; or (3) a showing that the reason for his alleged adverse action is pretextual.").

disciplinary review.[52] Mr. Phillips also states that following his complaints he saw "[Stahl] and Robert Fischer and Walter Britton sitting around talking and Robert Fischer looked at me and then they all looked at me and started laughing."[53] In sum, a jury could conclude that Mr. Phillips established his prima facie race retaliation case.[54]

Further, a jury could infer that Great Dane's proffered reason for firing Mr. Phillips was a pretext for race retaliation[55] because, in addition to evidence sustaining the causation element in Mr. Phillips's prima facie case,[56] Mr. Phillips has pointed to evidence suggesting that the individuals who disciplined him knew that he had previously complained about encountering racial hostility at the facility. Ms. McCauley, the human resources director whom the parties agree had a hand in Mr. Phillips's termination, was informed by Ms. Nowakoski that Mr.

---

[52] Nowakoski Notes – Exhibit O; (ECF No. 32-16); Nowakoski Deposition – Exhibit C (ECF No.32-5) at 15.

[53] Phillips Deposition – Exhibit A (ECF No. 33) at 14.

[54] *See LaRochelle v. Wilmac Corporation*, 210 F.Supp.3d 658, 702 (E.D.Pa. 2016) (explaining that evidence that plaintiff was shunned, denied shifts, and harassed for bringing race retaliation claim is sufficient to establish pretext).

[55] Assuming that Mr. Phillips established his prima facie case of race retaliation and that Great Dane's decision to fire Mr. Phillips was justified, *McDonnell Douglas* shifts back to Mr. Phillips to show that Great Dane's proffered reason is pretextual. *LeBoon*, 503 F.3d at 232-23.

[56] *See VanStory–Frazier v. CHHS Hosp. Co., LLC*, 827 F.Supp.2d 461, n. 5 (E.D.Pa.2011) (noting that evidence to show causal connection in prima facie case can be relevant to showing pretext).

Phillips had previously lodged complaints of racial discrimination.[57] Mr. Stahl, Mr. Phillips's direct supervisor, also knew that Mr. Phillips had lodged complaints of racial discrimination—and it was Mr. Stahl who caught Mr. Phillips sleeping at work.[58] To the extent Great Dane argues that Mr. Phillips's termination was not a pretext for race retaliation because the individuals who fired him did not know about his prior complaints to management, Mr. Phillips has pointed to facts that prevents the Court from accepting Great Dane's conclusion at this juncture.[59]

Accordingly, Great Dane's motion for summary judgment as to his race retaliation claims under Title VII, the Civil Rights Act, and the PHRA is denied.

### ii. Race Discrimination

Great Dane argues that Mr. Phillips cannot establish his prima facie case of race discrimination because he was terminated for repeated policy violations rather than under circumstances raising an inference of race discrimination.[60]

Like his race retaliation claims, Mr. Phillips's race discrimination claims are assessed under the *McDonnell Douglas* burden-shifting framework.[61] Under that

---

[57] Nowakoski Notes – Exhibit O; (ECF No. 32-16); McCauley Deposition – Exhibit B (ECF No. 32-4) at 8.

[58] Nowakoski Deposition – Exhibit C (ECF No.32-5) at 93. The record also suggests that Mr. Stahl was aware that Mr. Phillips was having serious medical problems. Time-Off Request Details – Exhibit S (ECF No. 32-20) at 2.

[59] *See Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1067 (3d Cir. 1996) (explaining factual nature of pretext analysis).

[60] Brief in Support (ECF No. 29) at 26-27.

[61] *Jones,* 198 F.3d at 410–11.

framework, Mr. Phillips must first establish a prima facie case of race discrimination, by demonstrating, *inter alia*, that "similarly situated persons who are not members of the protected class were treated more favorably, or that the circumstances of his termination give rise to an inference of discrimination."[62]

Here, a jury could infer that Mr. Phillips was terminated under discriminatory circumstances. Although Mr. Phillips admits that he was smoking in the unauthorized area, he explains that approximately six white employees standing twenty feet away were also smoking in a forbidden area, and none of those white employees were disciplined.[63] Mr. Phillips's story is corroborated by two former co-workers who testified that multiple employees were often seen smoking in the forbidden area and were never punished.[64] Indeed, it does not appear that anyone else has ever been disciplined for smoking in an unauthorized area at Great Dane's Elysburg facility.[65]

---

[62] *Kimble v. Morgan Properties*, 241 Fed.Appx. 895, 898 (3d Cir. 2007) (citations omitted).

[63] Phillips Deposition – Exhibit A (ECF No. 33) at 29.

[64] Brady Deposition - Exhibit K (ECF No. 33-1) at 15; Vincent Deposition – Exhibit M (ECF No. 32-14) at 16.

[65] Nowakoski Deposition – Exhibit C (ECF No.32-5) at 15. Although Great Dane argues that two other individuals were fired for smoking in an unauthorized area, *see* Brief in Support (ECF No. 29) at 31. those individuals did not work in Great Dane's Elysburg facility, *see* McCauley Deposition – Exhibit B (ECF No. 32-4) at 6, and, ostensibly, the same cast of Great Dane employees were not involved.

Further, a jury could infer that Great Dane's proffered reason for firing Mr. Phillips was a pretext for race discrimination[66] by considering evidence that Mr. Phillips's relationship with Great Dane had been punctuated by prior instances evincing racial animus. In addition to complaining about Great Dane employees' use of racial pejoratives,[67] Mr. Phillips also explains that Mr. Britton would condescendingly single him out, nitpick his work, and force him to stay late, while letting non-black employees go home.[68] Two of Mr. Phillips's former co-workers have corroborated Mr. Phillips's testimony, explaining that they witnessed Mr. Phillips being subjected to racial pejoratives or being forced to stay late at work.[69] To the extent Great Dane argues that Mr. Phillips's termination was not a pretext for race discrimination by emphasizing that Mr. Phillips was fired for smoking in an unauthorized area, Mr. Phillips has pointed to facts that allow his claim to proceed to a jury.[70]

---

[66] Assuming that Mr. Phillips established his prima facie case of race discrimination and that Great Dane's decision to fire Mr. Phillips for smoking in an unauthorized area amounts to a legitimate, nondiscriminatory reason justifying his termination, *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013), *McDonnell Douglas* shifts the burden back to Mr. Phillips to show that Great Dane's "proffered reason is merely pretext for intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

[67] Phillips Deposition – Exhibit A (ECF No. 33) at 17, 19, 27.

[68] Phillips Interrogatory – Exhibit H (ECF No. 32-10) at 3-4.

[69] Brady Deposition - Exhibit K (ECF No. 33-1) at 17; Vincent Deposition – Exhibit M (ECF No. 32-14) at 12-13; Brady Certification – Exhibit I (ECF No. 32-11) at 5.

[70] *See Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1067 (3d Cir. 1996) (explaining factual nature of pretext analysis).

Accordingly, Great Dane's motion for summary judgment as to his race discrimination claims under Title VII, the Civil Rights Act, and the PHRA are denied.

## III. CONCLUSION

For the foregoing reasons, Great Dane's motion for summary judgment will be granted in part and denied in part. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge